We'll hear argument next in Case 14-1382, Americold Realty Trust v. ConAgra Foods. Mr. Pospisil. Thank you, Mr. Chief Justice, and may it please the Court. The issue before the Court today is whose citizenship controls, for purposes of diversity, when a trust is a named party to a lawsuit. We believe, based upon over 200 years of jurisprudence from this Court, the answer is the trustees. We believe a bright-line rule is appropriate in this case. That in a lawsuit involving a trust, just as with a trustee, the trustees should be the party of interest and we should look at their citizenship. Why should we get to that question if when this case began, even if you looked only to the citizenship of the trustees, there was no complete diversity? Your Honor, that is correct. However, we do argue, and we argued in the Tenth Circuit, it was briefed upon whether or not we could dismiss the spoiling nondiverse parties. That issue was briefed under Everett Green's case and it was briefed before the Tenth Circuit, however, the Tenth Circuit did not address that issue. Respondents bring it up and they are briefed now, however, our position is that this Court should address the issue that's taken, that granted cert on, and send that issue back to the Tenth Circuit for review. What the Tenth Circuit held here, the issue that we appealed on, was to look at the beneficiaries as opposed to the trustees. And we would submit to you that that's just not supportable under common law and it provides or results in an unworkable test that is going to create more confusion than looking at the trustees. Scalia, and these trustees could not sue, could they? They cannot, Your Honor, because of a new creature created by Maryland law. That's correct, Justice Scalia. Maryland law has created a statutory trust, a real estate investment trust. However, our position is that just because that trust can sue and be sued as an entity, that does not change the analysis. There still has to be somebody we look to, some real people that we look to determine whose citizenship controls. Alito, this new entity is called a trust, but why is it more like a traditional trust than it is like another unincorporated artificial entity like an LLC? Your Honor, it's like a trust because there are two attributes that a trust have, that have historically had. There is a separation between legal ownership and beneficial or equitable ownership. We have that in this case. If you look at Maryland law, they define REIT as an unincorporated business trust in which property is acquired, held, managed, administered, controlled, invested or disposed of for the benefit and profit of any person who may become a shareholder. That distinguishes between legal ownership and equitable ownership. The next step we look at is the common law, when that's the situation, when you have a trust, you look and see do the trustees have the customary power to control, to manage, and to oversee the assets, also including to control the agency. Scalia, who owns these assets under Maryland law? Is it the trustees or is it this new corporation-type entity? Your Honor. That's the entity that can sue, and I assume that that's the entity that owns the property. It could be both, Your Honor, under Maryland law. And the trustees are sort of in the position of managers, just as though you hired a CEO. I would disagree, Your Honor. Under Maryland law, the assets of a real estate investment trust can be held by the trustees or the trust in its entity. Again, I don't think that makes the changes to the analysis of this all. It's still what citizenship we would look to. Trustees can be owned by the entity? It can be. Or the trustees. That's correct, Your Honor. You mean in one case or you can have a different type of trust? In one case. In one case. In one case, Your Honor. And I will say this, Justice Scalia, that no statute in the country that we have found has ever held that the legal ownership goes in the name of a trust beneficiary. The ownership is always in the name of the trust or the trustees. It is never held in the name of beneficiaries. And we think that is controlling here, for the reason that Navarro is pretty clear on this. When you have a trustee that has absolute control, you don't look at the beneficiaries. If the trustee has absolute control and legal ownership of trust assets, that's where you look to. That was exactly what happened in Navarro. That was a trustee who had the authority to sue, right, in the trustee's own name. That's correct, Your Honor. And that's not the case here. That is what happened in Navarro. However, the trust in Navarro was a Massachusetts trust, and it could have sued in its own name as well. And the way that Navarro was framed by the lower court when they decided the opinion was the district court held that for purposes of a business trust, we look to the citizenship of the beneficiaries. This Court opts to do that. But didn't Carden treat Navarro as a case where the suit was against the individual members, the individual trustees, trustees as individuals, not the trust? That's correct, Your Honor. So I thought Carden was trying to set up, if you're a corporation, that's one thing. If you're any other kind of association, we look to the members, the shareholders, I mean, the limited partners as well as the partners. Just drawing a clear line between corporations on one side, all other associations, and with the added notion that if Congress wants to make it different, it has to make it different, Congress can do that. Your Honor, we believe what Carden did is Carden tells us, if you're not a corporation, if you're another entity but not a corporation, we need to look behind the curtain, so to speak, and look to somebody else to see whose citizenship controls. Carden did not involve a trust, did not involve trustees, and did not involve trust assets or trust beneficiaries. That's why Navarro did not control in Carden and why Carden does not control in this case. Carden tells us the first step we have to do is we have to look through the trust. We have to look to somebody. Carden dealt with a partnership. And in terms of a partnership, relying on a long line of cases, Carden said that for partnerships we look at all the members. Well, there are no members in a trust. There are no members. In common law, a partnership was owned by members. They had legal ownership of that partnership and the assets. That just didn't exist in common law with trust. Sotomayor, it's not a traditional trust, because this is shareholders and not beneficiaries. Carden, it's a very different sort of concept. So now you're asking us to come and place trustee law above our general rule, that you're either a corporation or you're not. Carden, and only the corporation can have a place of business or a place of incorporation. Your Honor, we admit that the nomenclature is shareholder. That's what's used in the Real Estate Investment Trust Act in Maryland. However, that's not to be equated with another business entity. It's a shareholder is what they are called, but still they are the beneficial owners. The definition I read to you of a REIT under Maryland law makes clear that the shareholders own the – that the trustees own the property for the benefit or the trust for the benefit of the shareholders. Sotomayor, I thought the shareholders owned the property. They had the legal interest in the property. No, Your Honor. No. It's either the trust or the trustees under Maryland law. So Carden gets us halfway. The next thing we need to do is look at Navarro. Navarro tells us if it's management and customary to control these assets, we look to the trustees. I would tell the Court that the trustees in this case are very identical to the power of the trustees in the Navarro case. If you look at our petition for writ and the appeal, on page – the appendix, page 60, that's the amended statement of trust for AmeriCorps Realty Trust. In the section 5.1 on page 60, it defines the board of trustees and what their powers are. Under this trust, this is a quote, That is almost identical to the language you used to describe the trustees in Navarro. The board shall have full, exclusive, and absolute power, control, and authority over any and all property of the trust. The board may take any action, as in its sole judgment and discretion, is necessary or appropriate to conduct the business and affairs of the trust. That is almost identical to the language you used to describe the trustees in Navarro. Importantly, in Navarro, this is a quote from Navarro as well. The Court has never analogized express trust to business entities for purposes of diversity jurisdiction. Navarro realized that they were separate. And Carden realized that it was separate, too. In Carden, this Court specifically held that the real party and interest test that was adopted and used for Navarro was unique because it was the common law's dealings with trustees, which just didn't exist in Carden. Ginsburg. I thought that the distinction in Carden was quite plain, that Carden was the case against the individual trustees, not against the trust. Carden did say that. Carden distinguished Navarro. That's correct, Your Honor. That is correct. On the ground that the suit there was against the individual trustees, not the trust. That's correct. However, Carden did not decide that issue because, again, the trust was not a issue – there was not a trust issue in Carden. However, if you look at Navarro, what Navarro did is even though the trustees were the named parties, Navarro Court went ahead and looked and said, let's look at not only the trustees and what their power is, but let's look at the beneficiaries. Should we look at them as well? There's 9,500 of those. And the Court specifically said that is irrelevant. We do not look at the 9,500 beneficiaries of this trust. So the Court didn't have a trust as a party in front of it, but it went ahead and took the next step to say, look, who do we need to look at? Do we need to look at the beneficiary owners or the trustees? And that same analysis applies here, and it doesn't matter if the trust is the named party or the trustees. The decision is still going to be the same. A decision has to be made at who you look to. We would submit that one of the virtues of Carden was that it just set up very categorical bright-line rule. Everything that's an artificial legal entity that's not a corporation ought to be treated in the same way. It doesn't matter what you call yourself. You can put trust in the title or not put trust in the title. If you're an artificial legal entity that is not a corporation, that's subject to the rule of Carden. And there's something to just doing that in that bright-line categorical way so that we don't have to look at the thousands of different variations among legal entities and decide which fits in which box. Your Honor, Carden dealt with a partnership that had members. Again, there are no members in the trust. So if we export the language used in Carden to say you have to go look at the members because they're who you're going to look at, well, the closest thing to a member of a trust is going to be the trustees. It's not going to be the beneficiary. Let's look back at common law. When a partnership, before they could sue or be sued in their own name, a partnership always had to have the members of that partnership had to bring the cause of action. Now, let's look at the common law for a trust. Before a trust could be sued or sue in its own name, in those circumstances, the trustees were in charge of the litigation. It was the trustees that brought that lawsuit. So to the extent that Carden sheds any light on what is a member and what is not a member for the trust, we submit that the most analogous thing is that a trustee is the equivalent to a member for a partnership. The problem with the Tenth Circuit's rule, looking at all the beneficiaries, that's going to be a problem that is so unworkable that in certain circumstances you're not even going to be able to tell who is a beneficiary. For example, some trusts, like a charitable trust, don't even have beneficiaries identified. Ginsburg. Why should it matter as long as it's not a corporation? Because, Your Honor, again, we go back to how trusts have been treated separately and distinctly as a historical matter for hundreds of years. A trust has never been held to be equal to a business entity. There are basically three different categories. There is a corporation, there is an unassociated, unincorporated association, excuse me, and there are trusts, and they are different. But the beneficiary analysis used by the Tenth Circuit, again, not only would it be hard to identify who some beneficiaries are, but we have sometimes, look at Navarro. There were 9,500 beneficiaries in that trust. As one of the amicus points out. Scalia. How many are there in this one? They are between 100 and 200, Your Honor. Is that, you know, how many are there normally in these special Maryland trusts? To be a real estate investment trust for purposes of Federal taxation benefits, it's got to be at least 100. At least 100. At least 100. You know of any that are more than 1,000? Oh, yes. Really? Yes, Your Honor. If you look at the amicus that was filed by NARIT, they point out that there are some publicly traded REITs that have tens of millions of shareholders or beneficiaries. And they are not only all across the country, they are all across the world. And so a lot of these shares of REITs are also traded on a daily basis.  If I could talk this morning, I could be a beneficiary, 1015, I'm not. I sold my interest. How are you ever going to identify who the beneficiaries are at any given time? This Court has made clear, specifically for jurisdictional purposes, that we need a simple test that courts can use that says, we don't need to look behind and dig down deep in the weeds, let's just look at the case, figure out who do we look to, and the proper way to do that is the trustees. In this case, there's five trustees. It's very easy to find out who those trustees are. All you have to do is go to the Maryland, excuse me, the Maryland Secretary of State, and you can look up and find the Declaration of Trust, and you're going to see who those five individuals are. There's no place ever to look, prior to extensive discovery, which is going to be time-consuming, to find out who the beneficiaries are. That's just the way it is. Ginsburg. Well, why should the person who is invoking diversity jurisdiction has to show the case to you in State court? That's an option, Your Honor. However, the purpose of a diversity jurisdiction is to get a neutral playing ground for companies and for businesses of all types. To have an unworkable test at the front end would make it almost impossible for a litigant to even make that decision. But that's true of partnerships, it's true of LLCs, it's true of a wide variety of legal entities. That's true, Your Honor, and partnerships are controlled specifically by CARD. However, I would submit that there's not going to be as many partners as there's going to be trustees, beneficiaries, potentially, for it, especially for a real estate investment trust. Roberts. Is it a pertinent consideration in terms of the impact on Federal jurisdiction? I mean, this is standard run-of-the-mill commercial dispute about a commercial accident, and adopting one position would limit the number of times that such disputes will be brought in Federal court, the other one will expand it. Is that — I mean, does AmeriCold really feel that it's not going to get a fair shake in the Kansas courts in this case? Yes, Your Honor. They believe, like a lot of businesses do, that they have more neutrality and a level playing ground in the Federal court. Not only in Kansas, but all across the country, wherever. AmeriCold has 175 different locations with deep — cold storage, excuse me. They're all across the country. They can be sued anywhere. And under the rule the Tenth Circuit has put forth, they're never going to be able to go to Federal court. It's just never going to happen. It's almost going to be a near impossibility. Maybe that's a problem for Congress, as the problem of corporations was, you know. Congress adopted a special rule for corporations, and maybe it ought to adopt a special rule for real estate investment trusts. Congress always could, Your Honor. However, I don't think they have to in this case, because I think this Court's opinion and Nabarro, a couple of Carden, provide the answer. Sotomayor, do you have any definition of what the common law trust was? I'll give you the ones I understand, and you tell me how you don't. I thought in a common law trust, the trustees had legal title. They owned the assets. They could be sued individually, and they could sue in their own names. In this read, as I understand it, the assets are in the name of the trust, not in the name of the individual trustees. And it is the trust that sues or can be sued, not the individual trustees. Am I wrong about those? You are wrong in the second point, Your Honor. All right. So go ahead. I'm right on the first point. Yes. The point that you are incorrect is, under Maryland law, with this statute, the property of a trust can be held in the name of the trust itself or the trustees. Do you have a section for that? I'm going to look it up, so. Okay. That's not how I originally understood things, but. That's all right. You can give it to me on rebuttal. Justice Sotomayor, it's the Maryland Code of Corporations and Associations, section 8-301, print 12, and that provision is also on page 14 of our reply brief, the yellow brief. And that statute, that provision says a REIT may hold and dispose of legal title to property either, quote, in the name of the trust or in the name of the trustees. Thank you. So we believe the proper test is a combination between Nabarro and Cardin, and we should look at the trustees, and it doesn't matter whether or not the Real Estate Investment Trust can sue on its own behalf or has to sue through the trustees. It's all clear that the beneficiaries of the trust never have legal ownership, so therefore we should never look to them. If the Court has any other questions, otherwise I'll remain my time. Thank you, counsel. Mr. Duggan. Mr. Chief Justice, and may it please the Court, we urge the Court to adopt and reaffirm its bright-line ruling announced in Cardin that artificial entity associations sued or suing in their own names must measure their diversity citizenship by all of their members, which would include those persons who own a beneficial interest in the entity. In this case, that would be the shareholder members of a REIT who are in perfect accord with the limited partner's ownership interest in Cardin. Would you describe beneficiaries as a member of a trust? I mean, as you articulated, I think what's different than this, and Cardin sort of gets you past the trust, but you then have to still make a choice. Okay, we're not going to look at the trust. Do we look at the trustees or the beneficiaries? I don't know if I'd call beneficiaries members of a trust. Mr. Chief Justice, I think it's important to understand that there is a very significant distinction between a shareholder of a REIT and a beneficiary of a common-law traditional trust. As set forth in the appendix to the petition, page 79, which is the declaration of trust for AmeriCorps, the actual shareholders have personal property interest in the shares. They do not have any interest in the property of the trust entity, and they have no right to compel any partition, division, dividend, or distribution of the trust property. And that makes them uniquely different than a common-law beneficiary who actually has an equitable ownership interest in the trust property. Under common-law traditions, the trustee holds the legal title to the asset, but only for the benefit of those persons who are named as beneficiaries. And those beneficiaries have equitable rights in the property that's legally, nominally in the name of the trustee. Here, the shareholder members, as we described them, only have an interest in the personal property of a certificate of ownership, very much like the limited partners in Carden. In Carden, the limited partners didn't have an ownership interest in the assets of the entity. It had a certificate of ownership as a limited partner. In those two instances, Mr. Chief Justice, this limited partner in Carden and the trustee member, or the beneficiary member in this case, are virtually identical. They do two things. They invest money in an artificial entity and receive a certificate of ownership, and they periodically vote on important matters that affect the entity. They are, in most instances, virtually identical. So in my view, and I think this case rests upon defining a clear rule, a clear rule that says, when you have an artificial entity, we're going to measure by those persons that I consider to be the beneficial owners, and I'll tell you why that's important. Because that is consonant with the rule announced by this Court in Chapman v. Barney, the doctrinal wall case, those persons that were deemed to be members were the persons that were the stock owners of the joint stock company under New York law. In Great Southern, again, a limited partnership case, it were those persons that had an economic interest in the entity, and the same rule applied in Carden. If we are to adopt Americhold's position in this case and now suggest that the Board of Trustees that do not have an economic ownership interest in the entity itself controls, we're going to open the floodgates of uncertainty for the lower courts, and I'll tell you why. The Court has never explicitly addressed a limited liability company, and they're common throughout the United States. Limited liability companies can call their boards of managers boards of trustees. And in certain instances under those uniform laws, both the general partnership law and the LLC law, managers can hold property and trust for the entity, just like the trustees  At the end of the day, if we're going to now say it's the board of managers that are called trustees that we look to, everyone's going to analogize in the circuits that haven't decided the LLC question, I'm much more like the board of managers in Americhold and much different than the limited partners in Carden, and it's going to create uncertainty. Our rule, the Brightline rule, is very clear. When an artificial entity is sued or being or suing in its own name, we look to the members which in this case constitutes those persons that own the beneficial interest in the entity, the shareholder members, just like this court did in Chapman, Great Southern, Belligny, and Carden. And I think it's important to understand, in our view, Navarro never decided the question, did in fact a trust constitute an entity and who the members of the entity were? Navarro stands for the limited proposition, as suggested by Justice Ginsburg, that in fact we look to those persons that had a right to sue. And in this case, you couldn't sue the trustees individually, right? That is correct. In this case, under Maryland law, the trustees, even if they are the owners of the property and trust for the entity, still have no authority under the statute to bring suit, nor do they have the ability to be sued. The entity itself, Americhold Realty Trust, has admitted in this court and in the Tenth Circuit that it is the successor and interest to the corporation that my client's ConAgra Foods entered into a contract with.  When the entity is sued, the doctrinal wall of Chapman v. Barney is in play. Are you a corporation or are you an artificial association? In this case, they're an association we measure by those persons that have an ownership interest in the artificial entity, the shareholder members, not the board of managers. Kagan, do you think it's possible that we took a bit of a wrong turn in Carden? In other words, that in fact, all of these entities should be treated like corporations, and that the strongest arguments on the other side, you know, are really those arguments. And those arguments fly in the face of Carden, but that they're really arguments about why not treat these just like a corporation. Well, Justice Kagan, I agree, and I think the Court said in Carden that our decision is precedent-bound and perhaps even unresponsive to policy considerations, but it is indeed Congress's prerogative to change the law. And indeed, Congress has spoken. Congress spoke in 2005, and Congress said we've legislated against this backdrop of Chapman v. Barney, Great Southern, Beligni, Carden, Navarro, and we've reached a decision. If we made the law in the first place, why should we say, well, we made it, but we're not going to fix it, we'll let Congress fix it? Well, because I think Congress has fixed it, and Congress has recognized specifically with class-action lawsuits that they would treat associations the same as corporations if they are named as a party in a class-action lawsuit in the 2005 amendments to Section 1332. And they specifically said, if you are an unincorporated association, we're going to look to your place of incorporation and your principal place of business for purposes of diversity, jurisdiction, and class-action lawsuits. But they did not say, if worth regard to every other garden-variety commercial dispute like the one we have here today, that that rule would apply. And Congress is capable of speaking. They've spoken post-Carden in 2005, and they've made it clear that those doctrinal walls of Chapman v. Barney should remain in play as announced by this Court, but with the limited exception of class-action lawsuits. So if the Court took a wrong turn in Carden, Congress has affirmed it only to the extent that it has announced a rule that applies to associations for policy reasons in class-action cases. Breyer, the problem, just from the point of view of the common sense of it, is you have an organization that has, A, the organization, B, the trustees, and C, the shareholders. So applying Carden, what you would say, and Navarro, if you sue the trustees, you look to their citizenship. But if you sue the trust itself, you don't look to the citizenship of the trust, you don't look to the citizenship of the trustees. You go beyond that and look to the citizenship of the members. I mean, that seems odd. Why do you look to the members or the shareholders or the beneficiaries where you sue the trust itself, but you don't in the identical situation where the law of the State allows you to sue the trustees? I mean, that seems such a sport, such a fluke. But it is the sport that's played, even with regard to limited partnerships, Justice Breyer, because in the instance where in a limited partnership a general partner, who is managing the affairs of the entity, breaches a duty to a third party, and the entity itself also is responsible for a breach of duty, a party can sue both the general partner and the artificial entity. And if the general partner happens to be an individual, you measure by his natural citizenship, and you measure the entity by virtue of who the members are. And people make tactical reasons every day in the United States about who to sue and who not to sue. In some instances, they may choose to sue the general partner because they want to get into Federal court and they don't want to sue the entity, but they'll take their risks on suing only one of the parties that's liable. Or they may sue all of them. But they have to satisfy the rules applicable to each one of those particular parties that may be responsible. I think the other thing that's important here is that the argument suggested by the Petitioner is that we look to the control test, a test of those persons' rights that are in control. And this Court has implicitly and expressly rejected that test. Specifically, the Court rejected it in Carden, but more implicitly, if you look at the Chapman v. Barney case. Barney was a plaintiff in the case, brought the suit as president of the New York Stock Company, and he had the absolute right under New York law to control the litigation and bring the claim. But the Court never looked to the control of the litigation by Barney as a reason why it should measure the citizenship of the entity. It looked to all the owner members of the company. And this Court is — Is it the Petitioner's position that the Real Estate Investment Trust is more like a trust than an LLC, than a limited partnership? I think it's made that suggestion to the Court that in our — And if that is their position, what would your response be? Our response would be this. Why is an REIT more like a limited partner than it is a common law trust? There's two primary reasons, Justice Kennedy. The first one is, this is an artificial entity, and the entity can hold the assets and it's managed by a board of trustees, some of whom may or may not hold the assets of the entity in trust. But that's no different than a general partner of a limited partnership. Well, it seems to me that's a wash, because what you describe as a common law trust as well, Simon. Precisely. That sounds like a wash. In my view, the one marked distinction between their assertion here and a common law trust is this isn't a common law trust. It is an artificial entity. And if, in fact, their trustees can hold assets for the entity, then maybe they are acting as trustees and maybe they can bring certain claims. But our bright-line rule is this. The common law trust exists in nature. That's the common law, but it's not an artificial entity? It is not an artificial entity. Because we know it and love it so well, or what? Well, it's been around since the Middle Ages, as I understand the brief of Winston Wong, the amicus in the case. And from that vantage point, common law trust entities have never been recognized as entity status with capacity to sue and be sued as an entity. The trustees who are the legal nominal owners of the assets bring the claim. That's a significant distinction. But just as importantly, the beneficiary shareholders of a REIT have no equitable interest in the assets of the artificial entity because the very trust declaration itself provides its merely personal property. They are so much like the limited partners in Carden, and it's striking. But just as importantly, I think back to the point I was making, the Court expressly rejected the control test in Carden and said, quote, real persons to controversy test, and, quote, which parties have control over the subject of the litigation have never guided our reasoning with regard to who are the citizens of an artificial entity. And, in fact, they can't point to one single case by this Court where this Court has ignored the citizenship of the beneficial owners of an entity and instead substituted in a board of managers. And, indeed, if that were the holding of the Court today, the Court would be reversing itself from hundreds of years of precedent where it chose in Chapman, Great Southern, Belligny, and Carden to look to the ownership of the members and the artificial entity. One final point with regard to difficulty in measuring these entities was suggested that there might be thousands of members of a REIT. Well, that very well could be true, but there also could be thousands of limited partners in these sophisticated limited partnerships that are being used for real estate transactions. Just because there are a lot of owners of an artificial entity association doesn't seem to weigh heavily enough to create the ambiguity that you would. Breyer. Look at the other odd thing in writing this opinion your way. You say, well, this isn't really like a trust. I mean, it is sort of a trust. But there are important differences. They can sue and be sued, the trust itself can hold the property, and the beneficiaries do not have an equitable interest. And because they don't have an equitable interest, it's more like a private association or et cetera in Carden. But, of course, that means that we look to their interest. We look to their property. We are basically having them as part of the necessary parties because they have a property interest. The very people we just said that this is a different kind of organization because they lack an equitable interest in the property. But that's no different than what we do with limited partnerships under Carden. We simply look at the limited partners for purposes of measuring diversity.  The final point is there was an argument that said, well, you know, REITs are publicly traded, and that is true. But the NREIT brief, the amicus brief, points out that nearly 80 percent of all REITs opt to be corporations. And most publicly traded REITs are corporations. And, indeed, Maryland REITs can choose the corporate form of incorporation, and they would be measured simply by the principal place of business and their state of incorporation. Just because a few REITs choose to be associations doesn't seem to justify creating uncertainty in the doctrinal wall framework that's been announced by the Court and now have people trying to analogize to a board of managers instead of the owner beneficial members. I have nothing further unless there's more questions from the Court. Roberts. I just have one question on the Safeway and Kraft business. In the Tenth Circuit, you advised the Court that you thought they were dispensable nondiverse parties, that they hadn't appealed. And before this Court, you agreed to dismiss another dispensable nondiverse party. And then your brief comes in and you say, well, I've changed my mind. They're not dispensable. I wonder why. It seems a bit of sharp practice. Well, I think, Mr. Chief Justice, that if, in fact, that's a question that still remains, if you affirm or if you reverse and say that we measure by the trustees, it should be remanded to the Tenth Circuit for them to make a determination in the first instance. It was raised by the petitioners for the first time, as I understand it, in their merits brief that Kraft and Safeway were properly dismissed. We improvidently took the wrong position in front of the Tenth Circuit, and we don't think Newman Green supports that position. And I think the Court can review Newman Green and look at it and say, well, really, are they dispensable parties or not? And I think, quite frankly, if, in fact, the Court adopts a ruling here that says we measure by the board of managers instead of the owner members, then it would be appropriate to remand back to the Tenth Circuit, not only to decide the case on the merits, which they didn't decide, but also to make a determination as to whether Kraft and Safeway really, truly are dispensable or not. Roberts So does it extend the litigation even further than it's already been? Pottow. Unfortunately, perhaps. Okay. Thank you, counsel. Thank you so much. Mr. Pops, you have 11 minutes remaining. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to start off by addressing Justice Breyer's comment about gamesmanship. You're absolutely right. What difference does it make if the trust is sued or the trustee is sued? We're still looking at trust assets. It doesn't make any difference. Breyer's point really is that this is sort of like a trust, but not very much. And indeed, the key point to me is that the shareholders here have no beneficial interest in the property. And that's the second argument I wanted to make, Your Honor. There are two statute – two statutory sites that I want to give to the Court. And one of them I read already. Under Maryland Code of Corporations and Associations 8-101, print C, the definition of REIT is as follows, an unincorporated business trust in which property is acquired, held, managed, administered, controlled, invested, or disposed of for the benefit and profit of any person who may become a shareholder. Second provision, Missouri or Maryland Code of Corporations and Associations 1-101, print E, the definition of a business trust is a REIT engaged in business in which property is acquired, held, and managed for the benefit of shareholders. Breyer's point is that shareholders shall have no interest in the property of the trust. Your Honor, if anything, that distinction makes this even further removed. Why would those shareholders, if they have no interest whatsoever, why would we ever even look to them? That makes even more sense. Breyer's point. Breyer's point. Kennedy, your client did. That's what it says. How are we supposed to take that? Your Honor, I would say that the statute obviously is what controls here. I mean, because we want to have a rule that's across-the-board for all trusts. And if you look at the statute of Maryland, the statute of language that I just said definitely creates an equitable interest in shareholders, bless you, for a real estate investment trust. There was another point that Respondents made, I'd like to point out, is that they said there is no case in which this Court has looked to anything other than beneficiaries when you're involved in a case of a trust. I would submit there's two responses to that. Number one, there's a case that we cited in our brief. It's called Thomas v. The Board of Trustees of The Ohio State University. In that case, the Board itself was sued in its own name. It was the party that was allowed to be sued by the Ohio laws. It was a case that involved adverse possession, with some property that the students and the university owned. There was an issue of jurisdiction, whether or not there was diversity. The Court looked not to who the beneficiaries of that Board of Trustees were. The Court looked to the trustees that sat on that Board. That's who they looked to. They weren't a party to that action. The Court nowhere looked at the beneficiaries. You're not going to see that language at all in that case. In the second case, this Court was sued by the Board of Trustees of The Ohio State University. Scalia, who was the party, who was the defendant in that case? You say the trustees were not a party? That's correct. The Board itself was sued by the Board of Trustees of The Ohio State University. No, the Board of Trustees would be like the equivalent of a trust. You look at the trust. Okay, well, who do you look to? Do you look to who the beneficiaries of that are, or do you look at who controls them? And what the Court did in that case is they looked to who controlled the members of that Board. Scalia, is that standard? With common law trusts, can you sue either the trustees or the Board of Trustees? Your Honor, when I say Board of Trustees, I'm talking about that was a unit, that was a specific entity. It was called the Board of Trustees. It was an entity. It was created under Ohio law. Scalia, when you have a bunch of trustees, aren't they normally referred to as the Board of Trustees? That's true, Your Honor. However, this was a specific provision under Ohio law that allowed that entity itself to be sued or sue in its own name. And what the Court did is it looked behind the curtain. There is a special statute that allowed the Board of Trustees to do that. That's correct, Your Honor. That's correct. Another case more recently where the Court did, in fact, look to something beyond the beneficiaries is Navarro, of course. Navarro did look at the beneficiaries. It said, we're going to look at the beneficiaries, but that's not going to control. And I realize that a trust was not the named party there, but the Court, it would have been superfluous for this Court to even look at the beneficiaries if that was not an issue. The Court knew that it's going to be the trustees or the beneficiaries, and they specifically said the 9,500 beneficiaries we don't look at. We believe the same rule should apply here. If the Court has no other questions, we would be happy to answer them. Yes. Breyer. I do have one. Yes. Suppose I wanted to list, I wanted to list a synthesis of which Bogart or Scott on trust has as the characteristic of the traditional common law trust. And then I'd like over in the other column the characteristics of your organization. Okay. And now what do I read? I don't think you can list them now. Is there something I can read just to get an idea of that? Maybe they're identical. Are you going to say they're identical? They are identical. And I can lay them out for you. Let's look on the left side. The left side you're going to have traditional trust. You're going to have a separation between legal ownership and equitable ownership. Let's look on the right side. Let's look at a real estate investment trust under Maryland law. You have legal ownership, which is either in the name of the trustees or the trust, and you also have equitable ownership in the shareholders. And I'll go back to those two statutes that I cited to you earlier, Your Honor. So those are the attributes that exist in a common law trust, and they're also the attributes that exist in a traditional trust. If the Court has no further questions, we would request that the Court reverse the Tenth Circuit. Thank you, counsel. The case is submitted.